RICHARD HILLIARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hilliard v. Commissioner
Docket No. 8256-84.
United States Tax Court
T.C. Memo 1985-18; 1985 Tax Ct. Memo LEXIS 615; 49 T.C.M. (CCH) 504; T.C.M. (RIA) 85018; January 10, 1985. Richard Hilliard, pro se. Jose A. Bonau, for the respondent. FEATHERSTON MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $1,169 in petitioner's Federal income tax for 1980. The issues for decision are as follows: 1. Whether petitioner is entitled under section 152(a) [1] to dependency exemption deductions for his daughters Terri and Delcin for 1980. 2. Whether petitioner's income tax for 1980 should be computed under the rates applicable to unmarried individuals, to heads of households, or to married individuals filing separate returns. 3. Whether petitioner is entitled to a $200 child care credit pursuant to section 44A. 4. Whether petitioner is entitled to an individual retirement account deduction of $327 for payments made in 1980 to the City of New Orleans Employees' Pension Plan. 5. Whether petitioner omitted from his *618 1980 income tax return wages in the amount of $1,239, and interest income in the amount of $18. Petitioner was a legal resident of New Orleans, Louisiana, when he filed his petition. He filed a separate Federal income tax return for 1980. For the sake of clarity, we shall combine our Findings of Fact and Opinion with respect to the issues as indicated below. Issues 1 through 3
Petitioner and his wife, Carol, were married in 1965. They were separated at least as early as 1969, but have not been divorced. Two daughters were born of their marriage, Delcin, who reached 16 years of age in 1980, and Terri, who became 14 years of age in that year. The marital problems of petitioner and Carol have from time to time received the attention of the local domestic relations or juvenile court, and at some point prior to 1980 petitioner was ordered to pay $60 every 2 weeks for the support of the two children. A certificate by the Orleans Parish Juvenile Court reflects that he, in fact, paid $1,620 in 1980. Petitioner testified unequivocally *619 that he and Carol reconciled from time to time, and that they lived together as a family during most of 1980 in a house at 2723 Spain Street in New Orleans. His daughter, Terri, lived with them, he testified, and he provided her with food, clothing, and other support. The other daughter, Delcin, lived with her grandmother, and he contributed to her support by providing cash for clothing and other needs. During 1980, petitioner's salary was approximately $9,300. Carol testified, however, that she has not lived with petitioner since their separation in 1969. She testified that she had never lived at 2723 Spain Street, and, in fact, did not even know where Spain Street is located. According to her testimony, she lived during 1980 in an apartment owned by her mother located at 2072 Hope Street in New Orleans. During 1980, Carol's salary from the Orleans Parish School Board, according to her testimony, was $12,700. The testimony of petitioner and Carol is thus in direct conflict. We must decide whose testimony is truthful. Influenced in part by the fact that petitioner has the burden of proof concerning the dependency exemption deduction and related issues, we have *620 concluded that his testimony does not carry that burden. First, petitioner paid the $1,620 into the registry of the juvenile court in 1980 when, he testified, he and Carol were living together as husband and wife. We do not find convincing his explanation that he made the juvenile court payments in that year, even though he and Carol were living together as husband and wife, in order, if we understand his position, to protect himself from trouble with the juvenile court in the event they separated again. Further, petitioner insisted on a change in the stipulation of facts to show his address as 2723 Spain Street in New Orleans even though the preprinted label used on his 1980 return, the Form W-2 issued by his employer, and a Form 1040X, Amended U.S. Individual Income Tax Return, which he filed September 30, 1981, show his address as 940 Montegut Street in New Orleans. The 2723 Spain Street address is shown on a Form 2441, Credit for Child and Dependent Care Expenses, which is part of his 1980 return, as the address of the two individuals, Lulu and Geneva Williams, who, he testified, cared for his daughter Terri while she and Carol lived with him in 1980. None of petitioner's *621 testimony even suggests that anyone other than their daughter Terri lived with him and Carol in 1980. Taking into account all of the evidence of record, we think it inconceivable that Carol and Terri, as well as Lulu and Geneva Williams, lived at the house at 2723 Spain Street where, it is stipulated, petitioner lived in 1980. We are not convinced that Carol and Terri lived with petitioner during 1980. Having rejected petitioner's contention that he and Carol lived together during 1980, we must deny his dependency exemption deduction claim. The evidence simply does not show that he furnished over half of the support of either one of his two daughters within the meaning of section 152(a). [2] Admittedly, one of his daughters lived with her grandmother during 1980, and we think the other one lived with Carol. True, petitioner furnished the $1,620 paid into the registry of the juvenile court for the children's support but, beyond that amount, the only evidence as to any support contributions by petitioner is vague testimony as to purchases of requested items and cash gifts. No total amount is shown. There is, moreover, no evidence as to the amount of the support of *622 the children provided by Carol and her mother. Accordingly, petitioner is not entitled to dependency exemption deductions for his two daughters. [3]
As to petitioner's filing status, petitioner's 1980 income tax return showed his status as single ("numarried"). On September 30, 1981, he filed a Form 1040X, Amended U.S. Individual Income Tax Return, on which he claimed head of household status, explaining, however, that "I want the IRS to figure my tax from my original return." The notice of deficiency denited the claim to head of household status on the ground that petitioner had not furnished over half of the support of a qualifying relative. Because we have sustained *623 the determination that he did not maintain a home for either one of his children during 1980, we agree that he is not entitled to head of household status. [4] There remains the question as to whether petitioner is to be treated as a married or unmarried person in determining the applicable rates. Section 2(c) prescribes the tax rates applicable to every individual who is not a married individual (as defined *624 in section 143). Section 143(a) provides: (a) General Rule.--For purposes of part V-- * * * (2) An individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married. The record contains testimony by both petitioner and Carol concerning their many ventures into the local domestic relations courts. The record is not entirely clear as to whether, during 1980, they were "legally separated * * * under a decree of separate maintenance," but we infer from the testimony that they were. Accordingly, petitioner's tax is to be computed at the rates applicable to unmarried individuals. As to the child care credit, because petitioner did not maintain a household which included one or both of his daughters, and did not provide over half of the support of either dauther, he is not entitled to the claimed child care credit. [5]
*625 Issue 4
In 1980, petitioner was employed by the City of New Orleans and participated in its employees' retirement system. On his return for that year he claimed a deduction of $327 on the theory that he contributed that amount to an individual retirement account (IRA). Section 219(a) allows a deduction for limited amounts of cash contributions to individual retirement accounts described in section 408(a). Section 219(b)(2)(A)(iv), as it was in effect for 1980, provides, however, that no deduction is allowed for an individual for a taxable year if, for any part of the taxable year, he was an active participant in "a plan established for its employees by the United States, by a State or political subdivision thereof, or by an agency or instrumentality of any of the foregoing." Because petitioner was an active participant in the retirement system of the City of New Orleans, a political subdivision and municipal corporation of Louisiana, he was not eligible to deduct, for 1980, contributions to an individual retirement account, and the New Orleans plan itself cannot be regarded as an individual retirement account under section 408. [6]
*626 Issue 5
By stipulation, petitioner has agreed that his 1980 income tax return omitted wages of $1,239 from the United States Army National Guard and interest income of $18 from the N.O.M.E. Credit Union. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, in the form in effect for 1980, unless otherwise indicated.↩
2. SEC. 152. DEPENDENT DEFINED. (a) General Definition.--For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): (1) A son or daughter of the taxpayer, or a descendant of either, * * * ↩
3. No contention has been made as to the possible application of sec. 152(e).↩
4. SEC. 2. DEFINITIONS AND SPECIAL RULES. * * * (b) Definition of Head of Household.-- (1) In general.--For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in subsection (a)), and either-- (A) maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of-- (i) a * * * daughter * * *. * * * For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual. * * *↩
5. SEC. 44A. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT. (a) Allowance of Credit.--In the case of an individual who maintains a household which includes as a member one or more qualifying individuals (as defined in subsection (c)(1)), there shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to 20 percent of the employment-related expenses (as defined in subsection (c)(2)) paid by such individual during the taxable year. * * * (c) Definitions of Qualifying Individual and Employment-Related Expenses.--For purposes of this section-- (1) Qualifying individual.--The term "qualifying individual" means-- (A) a dependent of the taxpayer who is under the age of 15 and with respect to whom the taxpayer is entitled to a deduction under section 151(e), (B) a dependent of the taxpayer who is physically or mentally incapable of caring for himself * * * * * *↩
6. Respondent's trial memorandum indicates that, at one point, petitioner contended that the New Orleans plan is a "simplified employee pension" plan under sec. 408(k). There is no merit in that argument for a variety of reasons. A sec. 408(k) simplified employee pension plan is an "individual retirement account" or an "individual retirement annuity" which meets certain additional specific requirements. The New Orleans plan is neither an "individual retirement account" (i.e., "a trust created * * * for the exclusive benefit of an individual or his beneficiaries" under sec. 408(a)) or an "individual retirement annuity" ("an annuity contract * * * issued by an insurance company" under sec. 408(b)). As far as we can tell from the papers before us, the New Orleans plan is a qualified pension plan under sec. 401 as contended by respondent.↩